1

2

3

4

5

6

7

8                 **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10

11   CARMAN BEMISDARFER,              CASE NO. EDCV 17-1336 SS

12                  Plaintiff,

13        v.                         **MEMORANDUM DECISION AND ORDER**

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social
15   Security,

16                  Defendant.

17

18                              **I.**

19                        **INTRODUCTION**

20

21        Carman Bemisdarfer ("Plaintiff") brings this action seeking

22   to overturn the decision of the Acting Commissioner of Social

23   Security (the "Commissioner" or "Agency") denying her application

24   for Supplemental Security Income.  The parties consented, pursuant

25   to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

26   United States Magistrate Judge.  (Dkt. Nos. 11, 12, 14).  For the

27   reasons stated below, the Court AFFIRMS the Commissioner's

28   decision.

## II.

### PROCEDURAL HISTORY

On June 21, 2013, Plaintiff filed an application for Supplemental Security Income ("SSI"), pursuant to Title XVI of the Social Security Act, alleging a disability onset date of October 2, 2012. (AR 134, 213-34). The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 120-49). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on September 4, 2015. (AR 40-91, 165-66). The ALJ issued an adverse decision on March 11, 2016, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that she can perform. (AR 20-34). On May 9, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-6). This action followed on July 3, 2017.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on December 21, 1976. (AR 213). She was thirty-eight (38) years old when she appeared before the ALJ on September 4, 2015. (AR 40). Plaintiff has a tenth-grade education and a medical assisting certificate. (AR 48, 125). She is single and lives by herself. (AR 46). Plaintiff last worked in October 2012 as a certified nursing assistant (CNA). (AR 260-62). She alleges disability due to hepatitis C, bipolar disorder, and cirrhosis. (AR 260).

## A.    Plaintiff's Statements And Testimony

On August 8, 2013, Plaintiff submitted an Adult Function Report. (AR 282-90). She is able to take care of personal grooming and prepare simple meals without assistance. (AR 284). She is unable to perform household chores except laundry twice weekly. (AR 284). Plaintiff maintained that she cannot leave the house alone but acknowledged shopping for groceries. (AR 285). She engages in social activities with her boyfriend. (AR 286).

Plaintiff testified that she is unable to work due to chronic joint pain, hepatitis C, cirrhosis of the liver, and a mood disorder. (AR 47, 59-62). She acknowledged that her hepatitis C has been in remission for a year. (AR 60-61). She has pain in her hips and knees related to her degenerative joint disease. (AR 59, 66, 73). Plaintiff has abdominal pain from her cirrhosis. (AR 77-78). She reported being able to stand and walk for an hour before needing to lie down and rest. (AR 69). She denied using any assistive devices to ambulate. (AR 74). She has difficulty performing daily activities due to her pain. (AR 66-68). Plaintiff uses oral medications as well as patches to manage her pain. (AR 75-76). She alleged that her medications cause drowsiness. (AR 63).

Plaintiff acknowledged a history of drug abuse. (AR 65). She relapsed with methamphetamine in June 2013. (AR 65). She asserted that she checked into a rehabilitation center and has been sober ever since. (AR 65-66).

Plaintiff testified that she has difficulty maintaining focus and concentration. (AR 47, 50, 68-69). Her last psychiatric hospitalization was in August 2015. (AR 80).

The ALJ found Plaintiff "less than fully credible." (AR 26). The ALJ concluded that the objective medical evidence does not fully corroborate Plaintiff's allegations of disabling pain. (AR 26, 27). Further, Plaintiff has not received the type of treatment one would expect based on her subjective statements. (AR 26). Finally, the ALJ noted that Plaintiff has provided conflicting statements regarding her drug use. (AR 27). While she testified at the September 2015 hearing that she has been sober since June 2013, in July 2015 she admitted drinking on a daily basis and using methamphetamine.[1] (AR 27; see id. 1141).

**B.   Treatment History**

In August 2011, Plaintiff complained of bilateral knee pain, which sometimes radiates to her lower legs. (AR 380). An orthopedic evaluation found only tenderness to palpitation in the knees and positive McMurray's testing.[2] (AR 380). There was no evidence of erythema, edema, clicking with internal rotation, numbness, or tingling. (AR 380). An x-ray of the bilateral knees

---

[1]   Plaintiff does not challenge the ALJ's adverse credibility finding. (See generally Dkt. No. 20 at 2-4).

[2]   "The McMurray Test is . . . commonly used in orthopedic examinations to test for damage/tears to . . . the meniscus." <http://physicaltherapyweb.com/mcmurray-test-orthopedic-examination-knee/> (last visited May 1, 2018).

4

found "no significant joint effusion, indicating only "minimal arthritic change." (AR 379). In December 2012, an x-ray of the cervical spine found minimal disc space narrowing at C5-6 with minimal osteophyte formation. (AR 1010). In April 2013, a liver biopsy confirmed hepatic cirrhosis. (AR 370, 900). In August 2013, Plaintiff presented to the emergency room with symptoms of upper abdominal pain, fatigue, and weakness. (AR 689). An abdominal ultrasound revealed enlarged fatty liver, enlarged spleen, and small ascites.[3] (AR 687-88, 1013). A physical examination was largely unremarkable, with normal range of motion. (AR 691-92). Plaintiff was diagnosed with chronic liver disease, cirrhosis, and hyperbilirubinemia. (AR 696). She was prescribed several medications to manage her pain, including Norco. (AR 658).

On October 3, 2013, Sohail K. Afra, M.D., performed a complete internal medicine consultative examination on behalf of the Agency. (AR 657-62). No medical records were made available to Dr. Afra, who instead obtained a medical history from Plaintiff. (AR 657). Plaintiff's chief physical complaints were hepatitis C and degenerative joint disease. (AR 658). A physical examination was unremarkable. Plaintiff ambulated without difficulties and without the need for an assistive device. (AR 661). Plaintiff had normal range of motion in the cervical and lumbar spine. (AR 659-60).

[3] "Ascites is the abnormal buildup of fluid in the abdomen. . . . Symptoms may include increased abdominal size, increased weight, abdominal discomfort, and shortness of breath. . . . In the developed world, the most common cause is liver cirrhosis." <https://en.wikipedia.org/wiki/Ascites> (footnotes omitted) (last visited May 1, 2018).

She had pain in her knees with normal range of motion bilaterally. (AR 660). Plaintiff had full motor strength in her upper and lower extremities bilaterally. (AR 661). A sensory examination and Plaintiff's reflexes were within normal limits. (AR 661). Dr. Afra diagnosed a history of hepatitis C, mechanical-type back pain, and a history of arthritis. (AR 661).

In March 2014, Plaintiff complained of chronic pain in her knees and hips. (AR 793). A physical examination was unremarkable. (AR 794). She was diagnosed with generalized osteoarthritis, low back pain, chronic hepatitis C, cirrhosis of the liver, anxiety, and depressive disorder. (AR 794). In August 2014, Plaintiff was treated at the emergency room, complaining of "severe" low back pain, which radiates to her abdomen. (AR 1113). An abdominal CT scan revealed dilated veins of the abdominal wall, findings suggestive of cirrhosis and portal hypertension.[4] (AR 892-93, 1015-16, 1130). In November 2014, Plaintiff complained of severe pain in her right hip. (AR 817). A physical examination was unremarkable. (AR 818). Plaintiff's treating physician assessed generalized osteoarthritis, low back pain, chronic hepatitis C, cirrhosis of the liver, anxiety, depression, bipolar disorder, and chronic obstructive pulmonary disease. (AR 818-19). A right hip x-ray was ordered and pain medications prescribed. (AR 819). In January 2015, a CT of Plaintiff's lumbar spine indicated mild disc

---

[4] "Portal hypertension occurs when there is an obstruction of blood flow through the liver and pressure rises within the portal vein." <www.medicinenet.com/portal_hypertension/article.htm> (last visited May 2, 2018).

degeneration and right L5 spondylolysis and right L5-S1 face arthropathy. (AR 896). A CT of her right hip found mild osteoarthritis. (AR 901).

On March 16, 2015, Jeffrey D. Seip, M.D., an orthopedic specialist, evaluated Plaintiff for complaints of hip pain. (AR 903-05). Plaintiff reported "sharp pain that pops" and stated that she has been falling lately. (AR 903). She takes Norco for her pain, which she described as 9-10/10 currently and usually 7-8/10 with activity. (AR 903). Plaintiff also complained of fatigue, hearing loss, ringing in the ears, earache, swollen glands, swelling of feet and ankles, frequent urination, varicose veins, dizziness, numbness, tremors, excessive thirst, and heat and cold intolerance. (AR 904). On examination, Plaintiff ambulated independently without an assistive device. (AR 904). She had painful palpation over her right hip. (AR 904). While Plaintiff had painful range of motion with rotation, she had full range of motion of her knees and ankles. (AR 904). Dr. Seip found no evidence of neurological defects. (AR 904). He diagnosed mild osteoarthritis of the right hip and ordered a cortisone injection. (AR 904-05; see id. 907, 1025).

In April 2015, an abdominal ultrasound indicated an enlarged fatty liver with features of cirrhosis, but no evidence of ascites or varices. (AR 1026-27). A second ultrasound later that month revealed mild hepatic steatosis and small hepatic lesions consistent with hemangiomatosis. (AR 773). A CT scan of the abdomen found "minimal varices" near the cardia of the stomach.

(AR 771). The liver, spleen, pancreas, and gallbladder were "unremarkable." (AR 771).

On May 22, 2014, Zeid Kayali, M.D., Plaintiff's treating physician, completed a "Medical Opinion Re: Ability To Do Work-Related Activities (Physical)." (AR 716-18). Dr. Kayali opined that Plaintiff can lift and carry less than ten pounds both occasionally and frequently. (AR 716). He further concluded that Plaintiff can stand and walk for less than two hours in an eight-hour workday and sit for six hours in an eight-hour workday. (AR 716). Dr. Kayali further limited Plaintiff to never climbing stairs or ladders; avoiding all exposure to extreme cold, extreme heat, respiratory irritants, and hazards; and no driving automobiles or operating machinery. (AR 717-18). Finally, Dr. Kayali opined that Plaintiff would likely miss three or more days of work per month as a result of her impairments or treatment. (AR 718).

## C.   State Agency Consultant

On March 27, 2014, M. Mazuryk, M.D., a State agency consultant, reviewed all the available evidence in the medical file. (AR 120-33). Dr. Mazuryk opined that Plaintiff can occasionally lift twenty pounds, frequently lift ten pounds; stand, walk, or sit six hours in an eight-hour workday; occasionally climb ramps/stairs and ladders/ropes/scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. (AR 129-30). Dr. Mazuryk also concluded that Plaintiff should avoid concentrated exposure

to extreme heat, vibration and hazards. (AR 130-31). On January 24, 2014, L.C. Chiang, M.D., another State agency consultant, concurred with Dr. Mazuryk's assessment. (AR 144-45).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)	Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)	Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)	Is the claimant capable of performing his past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5)	Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work

experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.[5] (AR 34). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 21, 2013, the application date. (AR 22). At step two, the ALJ found that Plaintiff's cirrhosis of the liver; history of chronic hepatitis C virus infection; osteoarthritis in the cervical spine, lumbar spine, right hip, and both knees; obesity; mood

_____

[5] Plaintiff was found not disabled in a final decision by an ALJ dated February 15, 2012, based on a prior application for SSI benefits. (AR 107-15). The ALJ did not give res judicata effect to the prior finding because he found that Plaintiff submitted new and material evidence that demonstrated new or more severe impairments than existed during the prior adjudication period. (AR 20).

disorder secondary to substance abuse; methamphetamine abuse; and alcohol abuse are severe impairments.[6]  (AR 23).  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations.  (AR 23-25).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform a range of light work, as defined in 20 C.F.R. § 416.967(b),[7] except:

> [Plaintiff can] stand and walk for six hours out of an
> eight-hour workday with regular breaks; walk on uneven
> terrain occasionally; sit for six hours out of an eight-
> hour workday with regular breaks; push and pull with the
> weight limits indicated for lifting and carrying; perform
> postural activities occasionally; must avoid
> concentrated exposure to extreme cold and vibration;

---

[6]   The ALJ found that Plaintiff's medically determinable impairments of chronic obstructive pulmonary disease (COPD), stomach varices, and left ankle sprain cause only a slight abnormality that would have no more than a minimal effect on her ability to work and are therefore nonsevere.  (AR 23).

[7]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 416.967(b).

understand, remember, and carry out simple instructions
to perform tasks that are simple and routine and require
only simple work-related decisions; and no other
exertional or nonexertional limitations.

(AR 25). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 32). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cafeteria attendant, toy assembler, and housekeeping cleaner. (AR 32-33). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act since June 21, 2013, the application date. (AR 33).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must " 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' " <u>Auckland</u>, 257 F.3d at 1035 (citing <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

In her sole claim, Plaintiff contends that the ALJ erred by failing to properly consider her treating physician's opinion. (Dkt. No. 20 at 2-4). She argues that "the ALJ failed to provide any specific and legitimate reasons for rejecting treating physician Dr. Kayali's medical opinion." (<u>Id.</u> at 3).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the

14

claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.; see also Reddick, 157 F.3d at 725 (The "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions,

15

the conclusions of the examining physician are not 'substantial evidence.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis in original). Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. Bayliss, 427 F.3d at 1216; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

On May 22, 2014, Dr. Kayali, Plaintiff's treating physician, completed a physical RFC form at Plaintiff's request. (AR 716-18). Dr. Kayali opined that Plaintiff could lift and carry less than ten pounds; stand and walk less than two hours in an eight-hour workday; sit about six hours in an eight-hour workday; never climb stairs or ladders; avoid all exposure to extreme cold, extreme heat, respiratory irritants, and hazards; and never drive automobiles or operate machinery. (AR 716-18). Dr. Kayali also opined that Plaintiff would likely miss more than three days of work per month. (AR 718).

The ALJ gave "little weight" to Dr. Kayali's opinion because it was "inadequately explained and inadequately supported." (AR 30-31). Because Dr. Kayali's opinion was contradicted by the State agency consultant, the Court reviews the ALJ's rejection of Dr. Kayali's opinion for "specific and legitimate reasons that are supported by substantial evidence in the record." Moore v. Comm'r

of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) ("The ALJ could reject the opinions of Moore's examining physicians, contradicted by a nonexamining physician, only for specific and legitimate reasons that are supported by substantial evidence in the record.") (citation omitted). The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Kayali's opinion.[8]

Dr. Kayali failed to adequately explain or support his opinion. Medical opinions that are inadequately explained or lack supporting clinical or laboratory findings are entitled to less weight. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected "check-off reports that did not contain any explanation of the bases of their conclusions"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ properly rejected physician's opinion where it was "conclusory and unsubstantiated by relevant medical documentation"); see also 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs

---

[8]    While the ALJ did not expressly find that Dr. Kayali's opinion was contradicted by the State agency physician's opinion, the Court can infer from the record that Dr. Kayali's opinion was inconsistent with the State agency physician's, who found that Plaintiff was capable of a limited range of light work. (Compare AR 716, with id. 129-30); see Trevizo, 871 F.3d at 676 ("The ALJ did not expressly find that Dr. Galhotra's opinion was contradicted by any of the other physicians, but we can infer from the record that on at least two points Dr. Galhotra's opinion was inconsistent with Dr. Quinones' — standing or walking and sitting within an eight-hour workday."). Even if Dr. Kayali's opinion was uncontradicted, the ALJ has given "clear and convincing" reasons that are supported by substantial evidence, as discussed below.

17

and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). As the ALJ noted, Dr. Kayali's explanation was "limited to listing the diagnoses of 'cirrhosis, chronic fatigue, hepatitis C, [and] mental disorder' and indicating that cirrhosis and portal hypertension 'prevents patient from lifting or pushing.' " (AR 30; see id. 717). The medical evidence does confirm that Plaintiff's cirrhosis, history of hepatitis C, and mood disorder are severe impairments. (AR 23). However, the mere existence of these conditions does not provide any support for the disabling limitations opined to by Dr. Kayali. Indeed, "[t]he mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); see Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability.").

Dr. Kayali reported that imaging, laboratory findings, and biopsies support his opinion that Plaintiff's cirrhosis precludes her from lifting or pushing. (AR 717). However, as the ALJ noted, Dr. Kayali did not describe these findings in any detail. (AR 31). Indeed, while there is some evidence that Dr. Kayali periodically treated Plaintiff beginning in March 2014 (AR 324), no treatment records for Dr. Kayali were submitted by Plaintiff, despite the ALJ holding the record open for two weeks following the administrative hearing (AR 43). Thus, it is not clear which findings, if any, Dr. Kayali reviewed in reaching his opinion. An

18

ALJ may reject a physician's opinion that is conclusory, brief, and unsupported by clinical findings.  Bayliss, 427 F.3d at 1216; Tonapetyan, 242 F.3d at 1149.

With respect to Plaintiff's portal hypertension, the ALJ found that "the objective medical evidence does not indicate that [it] was present on a continuing and persistent basis" such as would "impose the limitations assessed" by Dr. Kayali.  (AR 31).  The ALJ emphasized that the typical symptoms of portal hypertension, such as ascites or varices, were minimal or nonexistent during the relevant period.[9]  (AR 31) (citing id. 1013 (August 2013 abdominal ultrasound found only a "small amount of ascites"), 892 (August 2014 CT scan found "[d]ilated veins of the abdominal wall"), 1026 (April 2015 abdominal ultrasound revealed no evidence of ascites or varices), 771 (April 2015 CT scan found only "minimal varices . . . near the cardia of the stomach")).  "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).

Plaintiff contends that "extensive medical evidence fully supports [Dr. Kayali's] opinion."  (Dkt. No. 20 at 4).  To the contrary, as the ALJ's thorough discussion of the medical record

---

[9]    See    <https://www.webmd.com/digestive-disorders/digestive-diseases-portal#1> (describing varices (swollen veins) and ascites as two common symptoms of portal hypertension) (last visited May 3, 2018).

indicates, evidence regarding Plaintiff's orthopedic complaints was largely unremarkable. In August 2011, an orthopedic evaluation was normal except for tenderness to palpitation in the knees and positive McMurray's testing. (AR 27; see id. 380). An x-ray of Plaintiff's knees indicated only "minimal" arthritic changes. (AR 27; see id. 379). An x-ray of Plaintiff's cervical spine in December 2012 found only "minimal" disc narrowing with "minimal" osteophyte formation. (AR 27; see id. 1010). In an October 2013 consultative evaluation, a physical examination was largely unremarkable, with normal range of motion in the cervical and lumbar spine. (AR 28; see id. 659-61). In January 2015, a CT scan of Plaintiff's lumbar spine revealed only "mild" disc degeneration, and a CT scan of her right hip demonstrated only "mild" osteoarthritis. (AR 28; see id. 896, 901). In March 2015, an orthopedic specialist evaluated Plaintiff and found that Plaintiff walked independently, had tenderness over the right hip and painful range of motion upon rotation, but had full range of motion in her knees and ankles, and displayed no signs of neurological defects. (AR 28; see id. 904). The physician diagnosed "mild" osteoarthritis of the right hip and ordered a cortisone injection, after which there was little treatment. (AR 28; see id. 904-05, 907, 1025). Plaintiff has not identified any medical records to the contrary. (See generally Dkt. No. 20 at 4). Further, the ALJ found that while Plaintiff was diagnosed with cirrhosis in April 2013, imaging tests inconsistently indicated the presence of ascites and varices, as discussed above. (AR 27-28, 31; see id. 771, 892, 1013, 1026). Thus, the ALJ properly gave more weight to the State agency consultant's opinion, which the ALJ found was more

20

consistent with the medical record. (AR 30). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, at *2. "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." Id. at *3; see 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).

In sum, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for giving Dr. Kayali's opinion little weight. Accordingly, because substantial evidence supports the ALJ's assessment of Dr. Kayali's opinion, this Court must affirm the ALJ's decision.

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of

the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  May 3, 2018

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**